904 F.2d 36
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John FLANNIGAN, Plaintiff-Appellant,
Mildred Flannigan, Plaintiff,
v.
GAF CORPORATION, et al., Defendants,
Carey Canada, Inc.; the Celotex Corporation, Defendants-Appellees.
 No. 89-3650.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1990.
 
 Before BOYCE F. MARTIN, Jr. and RALPH B. GUY, Jr., Circuit Judges, and HORACE W. GILMORE, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiff, John Flannigan, appeals from a judgment entered in favor of the defendants, Carey Canada, Inc. (Carey) and The Celotex Corporation (Celotex). The plaintiff and his wife, Mildred Flannigan, brought suit against Carey, Celotex, and other defendants under a number of theories, alleging that the defendants were liable to the plaintiff for asbestos-related injuries.[1] On appeal, the plaintiff urges that the judgment be vacated and that a new trial be ordered, claiming that the district judge abused his discretion by (1) limiting the plaintiff to two expert witnesses and (2) by sustaining an objection to the impeachment of a defense witness during cross-examination by plaintiff's counsel. We conclude that the district judge acted within his sound discretion in both respects, and we will affirm.
 
 I.
 
 2
 The plaintiff and his wife filed this lawsuit on January 4, 1988, seeking damages for personal injuries under theories of strict products liability, negligence, and intentional tort against Carey, Celotex, GAF Corporation, and Asbestos Corporation, Limited. All claims except those against Carey and Celotex were settled prior to trial, and the district judge severed the intentional tort claim against Celotex for determination in a separate proceeding. The claims based upon negligence and strict liability theories proceeded to trial before a jury in December 1988. At the close of evidence, special interrogatories were submitted to the jury on the questions whether the plaintiff had an asbestos-related injury and whether the defendant Carey was liable for the injury. Because the jury found that Flannigan did not have an asbestos-related injury, it did not reach the second interrogatory. Based upon the jury's findings, the district judge entered final judgment in favor of both Carey and Celotex on June 15, 1989. This timely appeal followed.
 
 
 3
 John Flannigan began working for Carey[2] at the Lockland, Ohio, manufacturing facility in 1952. Over the years, his duties included loading and unloading bags of asbestos fiber and other raw materials from boxcars and driving a delivery truck that contained finished materials. At the time of the trial, Flannigan remained employed by Celotex at the Lockland facility.
 
 
 4
 In 1987, the plaintiff received a notice from his union advising him to have a physical examination to determine whether his exposure to asbestos had caused injury. At the time he received this notice, he was experiencing no symptoms of any lung injury or respiratory impairment.
 
 
 5
 Despite his lack of physical complaints, the plaintiff was examined by Dr. Michael Dohn, a medical doctor specializing in pulmonary medicine, in September 1987. Dr. Dohn reported hearing "crackles" while listening to the plaintiff's lungs with a stethoscope, sounds which are associated with asbestosis. In addition to listening to the plaintiff's lungs, Dr. Dohn performed pulmonary function tests, ordered and reviewed chest x-rays, and took note of the plaintiff's work history. Based upon the above evidence, Dr. Dohn diagnosed asbestosis. Although Dr. Dohn practices pulmonary medicine, he is not a board certified pulmonary specialist.
 
 
 6
 Dr. Dohn's report was subsequently reviewed by Dr. Stewart Hochron of New Jersey, who is board certified in pulmonary medicine. Dr. Hochron did not examine the plaintiff personally, but instead based his opinion on a review of Dr. Dohn's records. He concluded that the plaintiff had asbestosis.
 
 
 7
 Flannigan was examined by Dr. James Kennealy in September 1988, at the request of the defendant. Dr. Kennealy is a board certified pulmonologist. He conducted a physical examination and ordered chest x-rays and pulmonary function tests. Dr. Kennealy reported that there were no "crackles" present when he listened to the plaintiff's lungs. The pulmonary function tests revealed results in the low normal range, and the x-rays did not reveal evidence of asbestosis. Based upon the above, Dr. Kennealy rendered his opinion that the plaintiff was not suffering from asbestosis.
 
 
 8
 Dr. Eddy Bresnitz was appointed by the trial court to review the plaintiff's medical records and to offer an opinion as to whether Flannigan had asbestosis. Dr. Bresnitz is board certified in pulmonary medicine. Initially, Dr. Bresnitz was provided only with Dr. Dohn's records and report. Based upon his review of these records, Dr. Bresnitz informed the court of his opinion that the plaintiff had asbestosis. Dr. Bresnitz then received the records of Dr. Kennealy and the reports of both Dr. Hochron and Dr. Kennealy. Dr. Bresnitz was under the mistaken impression at this time that Dr. Hochron had examined the plaintiff personally and that he had heard "crackles" in his examination. Based upon his impression that two independent physicians had heard "crackles," Dr. Bresnitz did not change his opinion. At his deposition, however, Dr. Bresnitz learned for the first time that Dr. Dohn was not board certified, and that Dr. Hochron had not examined the plaintiff himself. Based upon this new information, and upon his own review of the x-rays and pulmonary function test results, Dr. Bresnitz stated that he could not say to a reasonable degree of medical certainty that the plaintiff had asbestosis.
 
 
 9
 At a pre-trial conference on December 19, 1988, the district judge ruled that each party would be limited to calling two expert witnesses at trial. Originally, the judge specified that the plaintiff could present the testimony of both Dr. Dohn and Dr. Hochron on the issue of the plaintiff's injury. He suggested that the plaintiff not call Dr. Gerrit Schepers, whom the plaintiff wanted to call to discredit any "state of the art" defense put forth by the defendants. Counsel for the plaintiff anticipated that Dr. Schepers would testify that the defendants knew, or should have known, of the dangerous, disease-producing capabilities of asbestos, and that they had the means to reduce or eliminate the health risks to their workers.
 
 
 10
 When counsel for the defendant informed the judge that he intended to call Mr. Howard Ayer, an industrial hygienist, to testify that the defendants could not have appreciated the dangerous, disease-causing nature of asbestos, the judge revised his ruling and stated that he would permit the plaintiff to call Dr. Schepers.
 
 
 11
 Defense counsel objected to the plaintiff being able to call two expert witnesses on the issue of the plaintiff's injury. The judge then ruled that the plaintiff would be limited to two witnesses, but that he could call any two he wished:
 
 
 12
 THE COURT: I'm going to back off of what I said. I'm not going to put you in the position of allowing Mr. Eagen to argue in the court of appeals that at the end of your case you hadn't proved something, and allowing you to add it on rebuttal doesn't save the problem. You may very well need Dr. Schepers on direct, and I'm going to let you call him on direct.
 
 
 13
 I'm not going to let you present repetitious testimony. Now, the whole purpose of my attempt to confine experts is that I think you do nothing but confuse the jury. I'm going to change what I said before. You may call two experts. You can call any two you wish. If at the end of the case it appears to me that you have been harmed, I will let you be heard on the right to call a third expert. I must confess, I don't see the necessity, because the only thing you have said that I think has any significance is that the expert you intend to call isn't Board certified. I would recommend you get somebody else.
 
 
 14
 MR. VANDERGRIFT: Well, perhaps that would make sense in some future case, but in this case we're faced with a dilemma, because the only physician that has actually examined Mr. Flannigan is Dr. Dohn, and the Board certified physician is Dr. Hochron, and in the discovery deposition of Dr. Bresnitz, he testified that he places some considerable reliance on whether an examiner is Board certified or not or whether a physician doing an evaluation is Board certified or not. So, by the independent expert's testimony, that could become quite a critical consideration.
 
 
 15
 THE COURT: I don't think so. Frankly, I don't see why each side isn't content with one pulmonologist. What is the necessity for two? Why? What added validity is there by having two? He's got two. You have got two. You know, these cases are beginning to trouble me. And I have a feeling that they have troubled other judges as well.
 
 
 16
 This is almost like a minuet. First is a stylized dance. You know what he'll do. He knows what you'll do. We hear the same testimony over and over, and I just wonder at the utility of this.
 
 
 17
 I'm going to stick with that. You may call two experts in your case. If you can convince me that a third one is necessary, I'll allow you to be heard. It's a manifest injustice. That's a different subject. But it's my understanding you are not going to be confronted with two pulmonologists.
 
 
 18
 (App. 140-42). At trial, the plaintiff called Dr. Dohn and Dr. Schepers as expert witnesses. He did not renew his request to call Dr. Hochron at any point in the trial.
 
 II.
 
 19
 The plaintiff claims that the district judge abused his discretion by limiting the plaintiff to two expert witnesses. It is well within the discretion of a district court to limit the number of expert witnesses who testify at trial. Coal Resources, Inc. v. Gulf & Western Indus., 865 F.2d 761, 769 (6th Cir.1989). However, it is an abuse of discretion to limit "experts 'because of mere numbers, without reference to the relevancy of their testimony.' " Id. (quoting Padovani v. Bruchhausen, 293 F.2d 546, 550 (2d Cir.1961)). In this case, we must determine whether the district judge's limitation of the plaintiff's case to two expert witnesses was focused merely on the number of witnesses or whether the judge "articulated legitimate, rational reasons for its decision." Coal Resources, 865 F.2d at 769.
 
 
 20
 The plaintiff maintains that the district judge focused solely on the number of experts that the plaintiff wished to call and not upon the substance of their testimony. He argues that Dr. Hochron's testimony was critical to his case because Dr. Hochron is a board certified pulmonologist. Of the two physicians who examined the plaintiff, only Dr. Dohn, who is not board certified, heard "crackles," which is the most significant sign of early asbestosis. Given the fact that Dr. Bresnitz would testify that he placed great significance on whether a physician was board certified, the plaintiff argues that Dr. Hochron's testimony was essential to his case and not cumulative. According to the plaintiff, Dr. Hochron's opinion would add needed weight to the plaintiff's claim that he suffered asbestos-related injury.
 
 
 21
 After reviewing the record and the comments of the district judge, we cannot say that he abused his discretion by limiting the plaintiff to two expert witnesses. The only difference between Dr. Hochron and Dr. Dohn is that Dr. Hochron is a board-certified pulmonologist. However, Dr. Hochron did not examine the plaintiff. He based his opinion solely on the record and report prepared by Dr. Dohn. Therefore, the probative value of Dr. Hochron's opinion is limited. We agree with the conclusion of the district judge that Dr. Hochron's testimony would be cumulative.
 
 
 22
 Although the trial judge limited the number of expert witnesses that each side could call, he stated at the time of his ruling that the plaintiff could seek to have the ruling changed during trial if he could convince the court of his need to call a third expert. The plaintiff did not ask the judge to revisit his ruling at any point during the trial. Although we stop short of saying that such a failure to take a court up on its offer to reconsider an evidentiary ruling constitutes a waiver, the objecting party must demonstrate prejudice to overcome the failure to raise the issue at trial. We are skeptical of the claims of parties who, like the plaintiff here, wait until appeal to challenge discretionary rulings by the trial court.
 
 III.
 
 23
 Flannigan's second allegation of error relates to the district judge's actions during the plaintiff's cross-examination of Dr. Kennealy. During cross-examination, the following exchange occurred:
 
 
 24
 Q. Has there been any change at all in recent years in the method that you use in listening to a patient's lungs with a stethoscope?
 
 
 25
 A. No.
 
 
 26
 Q. How many locations do you actually listen on the lungs with your stethoscope?
 
 
 27
 A. Well, again, we're talking about interstitial lung disease. I went through it on the screen. I would estimate that that's about 10 on each side, maybe somewhere between 10 and 15 on each side, for a total of 20 to 30.
 
 
 28
 And I should qualify that, and that's my, you know, my official approach, and then, if I hear things, I could easily get up to 50 or 100 if I'm having difficulty in determining what I'm hearing.
 
 
 29
 MR. VANDERGRIFT: Your Honor, if I may, I would like to hand the witness a copy of former testimony.
 
 
 30
 THE COURT: You may do so.
 
 
 31
 Q. Doctor, do you recall testifying at a discovery deposition in another case on August 27, 1987?
 
 
 32
 A. Ask the question again.
 
 
 33
 Q. Do you recall testifying at a discovery deposition in another case in August of 1987?
 
 
 34
 A. Well, I don't doubt that I did, but I can't remember it.
 
 
 35
 Q. You don't have a specific recall of it?
 
 
 36
 A. That's right.
 
 
 37
 Q. If I could refer you to page 8 line 21, the question that was put at that time was: "So, how many different locations do you actually think you place your stethoscope?" And could you read your answer, please? Line 23.
 
 
 38
 A. Yes, I've got it. "Two, four, six, eight, 10, 12, 14."
 
 
 39
 MR. EAGEN: I'll object and move to strike.
 
 
 40
 THE COURT: Motion granted. Totally irrelevant. Would you proceed please?
 
 
 41
 (App. 131-33).
 
 
 42
 The plaintiff asserts that Dr. Kennealy's testimony during the earlier deposition was a prior inconsistent statement, and that it would impeach Dr. Kennealy's testimony by showing that he conducted less thorough examinations than he now claims.
 
 
 43
 The district judge excluded the evidence on the grounds that it was irrelevant. Such decisions are within the sound discretion of the trial judge and can only be reversed for abuse of discretion. McLaurin v. Fischer, 768 F.2d 98, 104 (6th Cir.1985). The plaintiff argues that this line of cross-examination was relevant because it would assist the plaintiff in establishing that Dr. Dohn did a more thorough physical examination to detect the presence of "crackles" than did Dr. Kennealy. Such a distinction was critical to the plaintiff's case, he argues, because Dr. Dohn is not board certified.
 
 
 44
 Despite the plaintiff's claims that Dr. Kennealy's deposition testimony is inconsistent with his in-court testimony in this case, it is not clear to this court that the two statements are really inconsistent. For example, when answering the question at the earlier deposition, Dr. Kennealy may have been referring to the number of locations at which he places his stethoscope on each side. His answer at the deposition also does not preclude the possibility that he listens at more locations if he is having trouble determining what he is hearing. Moreover, twelve and fourteen locations can hardly be considered to be inconsistent with ten to fifteen locations.
 
 
 45
 At trial, the plaintiff accepted the judge's ruling and made no offer of proof as to the significance of the testimony that he wanted admitted. According to Fed.R.Evid. 103(a)(2):
 
 
 46
 (a) ... Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 
 
 47
 * * *
 
 
 48
 * * *
 
 
 49
 (2) ... In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
 
 
 50
 In a case such as this, where the allegedly inconsistent statement can be read to be consistent with the witness's trial testimony, it is incumbent upon the plaintiff to explain the significance of the proffered evidence to the trial court. The plaintiff here failed to do so, and the judge's decision to exclude the impeachment evidence was not an abuse of discretion.
 
 
 51
 AFFIRMED.
 
 
 
 *
 Honorable Horace W. Gilmore, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Mildred Flannigan's claim is for loss of consortium and is derivative of her husband's personal injury claim. For that reason, we will refer only to John Flannigan's claim
 
 
 [2]
 Celotex purchased Carey in 1972